Curia, per Pa chard SON, J.
The decision of the appeal depends upon this question : — were the jurors, who convicted the prisoner of murder, so constituted in law, and so summoned by the writ of venire, as to form the judicial authority required by our constitution, in order to render them a lawful jury of and for the regular court of general sessions, at Edgefield Court House, on the second Monday in March last ? The preliminary facts are the following.
At the last session of the Legislature, the judicial term for Edgefield district was extended to two weeks instead of one week. But in the Act passed for the purpose, there was an omission to provide for the drawing of juries to serve on the second week of this extended term.
But it so happened, that the Judge presiding at the preceding October term for Edgefield district, had already or *535 dered an “ extra court” to be holden on the fourth Monday in February last, and had drawn the jurors for such extra court.
But the legislative extension of the regular term to two weeks rendered such extra court unnecessary. Upon this change taking place, the same Judge, in January last, but now sitting at chambers, ordered the extra court to be postponed to the second Monday in March last, which was the time of the regular term, when so extended by the Act.
In the mean time the jurors had been summoned by the venire to appear on the fourth Monday in February, as required by the return of the writ, but were now notified, by the sheriff, to attend on the second Monday in March. Accordingly, the jurors, so drawn for the “ extra court” appeared; and of these jurors the jury that convicted the prisoner at the regular term was constituted.
The proper inquiry is obvious : — could such intended jurors constitute their proper and constitutional department in the regular term of the court, in order to render the trial and conviction of Harden lawful ? Was the trial by jury, in the terms of the constitution, “ as heretofore used,” “ preserved inviolate V’ Upon such a conviction, can the Judge pass the sentence of death ; or could the sheriff execute it; or, was the trial and conviction merely formal, as being coram non judice, and of course inoperative, leaving the trial of the prisoner yet to be had at some future judicial term at Edgefield Court House ?
The case must be decided under the Acts that require the circuit Judges to order “ extra courts.” The first Act is that of 1817, 7 Stat. 817.
1. This Act authorizes the associate Judges, collectively, to order special courts, when necessary.
2. The Act of 1824 gives the same authority to the late Court of Appeals., 7 Stat. 326.
3. Then comes the Act of 1825, 7 Stat. 329. By this Act, the authority of ordering such courts is vested in the circuit Judges, in the following terms : “ that the circuit Judge who holds any court, shall, in case he is unable to *536 despatch the business of any court, be, and he is hereby, authorized and required to appoint an extra court.”
This enactment would restrict the power to order 11 extra courts” to the circuit Judge, while sitting in term time. But the fouth section enacts, “ that the clerk of the district in which such extra court is ordered, shall have power to draw a jury for that court, as in cases where a Judge has failed to attend a circuit court.” This section indicates that the circuit Judge may order the extra court out of term time; because it plainly assumes such an occurrence, by directing the clerk to- draw a jury, as when the Judge has failed to attend the court; meaning as the sheriff and clerk draw juries, when the circuit Judge has not appeared at the regular court. 'Such a power is ana-lagous to that formerly given to the Appeal Court, and would be essential in the event of the sickness or absence of the Judge. This authority, deduced from the fourth section, would seem, for similar reasons, to authorize the Judge to postpone the extra court he had before ordered.
These Acts are all remedial; to prevent arrears of litigation upon the dockets, and to save the necessity of inferior courts. But for this plain legislative purpose, I should give weight to the implication arising out of the Act of 1843, 11 Stat. 254, which gives power to the Judges to postpone the extra courts then ordered, that .is, in Dec. 1843.
But if the Judge, sitting at chambers, can order the court at any time; then, to alter the time at chambers, is incidental.
But for the purpose, at least, of deciding the appeal in this case, I assume that the Judge had a right, at chambers, to postpone the extra court ordered for February.
But what follows ? Can such postponement enable and qualify the jurors, so drawn and postponed, to be impan-nelled so as to constitute the proper department in the regular court, to try issues of fact ?
Upon this question the case finally depends. In deciding it, I do not deem it necessary to rely altogether upon *537 the return of the writ of venire, which is to the fourth Monday in February, and not to the second Monday in March. It is more to the exact office at court, and for what court such venire was the commission of the jurors, that I look for convincing argument.
Still, this court has decided, (see The State vs. Dozier, 2 Sp. 211, and The State vs. Williams and others, 1 Rich. 188,) that in the venire, constituting the commission of the juries, the omission of the seal of the court was fatal to the entire pannel.
But laying aside such considerations, I proceed to what I suppose more just reasoning. Here let me remark, that the affirmative proposition, that these jurors were qualified at the time they were impannelled, when the venire is not made returnable to the regular term, should be made evident ; otherwise, they cannot form a constitutional jury for such regular court; although good for the extra term.
But turn to the argument on the other side. The Acts, before noticed, give the grounds of the whole argument.
Can the postponement of the extra court to the second Monday in March, — which is unobjectionable, — can this give a further commission to the jurors so as to authorize them to be impannelled and constitute a judicial department, at the regular term; because holden at the same time and place ? Did not those jurors still stand as they were commissioned when first drawn; and, if so, would it not be inconsistent and forced to transfer such jurors to the regular court 7 The extra court may be well merged in the regular court. Its end and object terminated by the sitting of the regular court. But not e converso. And, if so, then, ipso facto, the extra court stood as if adjourned sine die, and the jurors discharged.
But, on the other hand, suppose the extra court not merged in the regular court, and that the Judge as well as the jurors had appeared. In that case, he must have held his own court, and could not have transferred his jurors to the regular court. But his presence or absence can make no difference in the application of a principle, or in the commission of the jurors. They stood precisely, and for *538 the purpose for which they were drawn and destined in Oct. 1845, at which time the term in which they were im-pannelled did not even exist, and could not have been contemplated.
The theory and reasoning, therefore, are as conclusive against their being impannelled at the regular court in March, as the return of the venire is inconsistent with its time.
The opposite argument seems to consist in a mere coincidence of the time and place of the two courts, coupled with, the fact, that the regular court had no jurors, and therefore the argument supposes the jurors in question might be adopted.
But suppose the other Judge had attended, opened and adjourned the court, would not the jurors have been functi officio'} But,-assuredly, the same consequence follows, if the sheriff, in his absence, called and adjourned the extra court.
Whether, then, the extra court was or was not, per leges, a court on the second Monday in March, it amounts to the same. Thus, then, the regular court had no jurors, and the verdict being only formal, is set aside, and the prisoner js remanded to stand his trial.
Warduaw and Frost, JJ. concurred*